UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF                                              CASE NUMBER 04-10658

ROBERT F. MEREDITH
    DEBTOR                                                       CHAPTER 7

MCKEITHEN PROPERTIES, LLC                          ADV. NO. 04-1110
and MARJORIE MCKEITHEN,
in Her Capacity as Trustee for
McKeithen Family Trust A and
McKeithen Family Trust B,
and in Her Capacity as Administratrix
of the Estate of John F. McKeithen and
the Estate of Marjorie Funderburk
McKeithen
    PLAINTIFFS

Versus

ROBERT F. MEREDITH, III
    DEFENDANT

## MEMORANDUM OPINION

McKeithen Properties, LLC and Marjorie McKeithen, both as trustee for McKeithen Family Trust A and McKeithen Family Trust B and also as administratrix of the Estate of John F. McKeithen and the Estate of Marjorie Funderburk McKeithen,[1] sued to prevent the discharge of debtor Robert F. Meredith ("Meredith") on the basis of 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) and (a)(6)(A). By the parties' agreement, the case was tried on the deposition transcripts of Meredith and his wife, Belinda Meredith, in lieu of live testimony.[2]

---

[1] For convenience, this opinion refers to Ms. McKeithen is her various capacities collectively as "McKeithen."

[2] McKeithen Exhibits 11 and 12.

1

This memorandum opinion sets forth the reasons why the court denies the debtor's discharge.

## BACKGROUND

When Robert Meredith filed chapter 7 on March 2, 2004, he was married to Belinda Meredith, his wife of 13 years. The couple had lived continuously in Louisiana since their 1990 marriage, and was subject to the Louisiana community property regime. La. Civil Code art. 2334 *et seq.* Thus, all property of the community became property of Meredith's bankruptcy estate when he filed his petition. 11 U.S.C. §541(a)(2).

Meredith had discussed filing bankruptcy with his wife on several occasions before he eventually filed his petition. Although Mrs. Meredith knew that her husband would likely need to file, she did not want to be involved in a bankruptcy: she thought it would be embarrassing and also jeopardize her employment with a local bank. When Meredith finally decided to file for bankruptcy, he suggested that his wife also might have to file her own case. Mrs. Meredith decided to forego filing because of her concerns,[3] so Meredith prosecuted his bankruptcy as an individual debtor.

## SUMMARY OF CLAIMS

**A. Failure to Disclose Assets and Transfers**

### 1. Omitted Community Movable Property

McKeithen alleges (and Meredith does not dispute) that Meredith omitted from his schedules several items of community property, including a Kubota tractor and bush hog, a Kubota ride-on mower, checking and savings accounts in Belinda Meredith's

---

[3] McKeithen Exhibit 11, p. 17-18.

2

name, clothing, jewelry, a safety deposit box, a Chevrolet truck, and an interest in Takin' Stock, a Louisiana partnership.[4]

### 2. Omitted Community Immovable Property

McKeithen also points out that Meredith failed to schedule the community's interest in a lease for a 10,000 square foot house on twenty-seven acres of land in Columbia, Louisiana.

The debtor and his wife owned the Columbia property at one time. However, in anticipation of a foreclosure after he defaulted on the mortgage loan held by Bank One, Meredith and a close friend, Mike Eymard, arranged to have Eymard's sons purchase the house through a newly-created corporation, TRAM Investments, Inc. ("TRAM").[5] TRAM then leased the house to Belinda Meredith for a five year term,[6] with monthly rent of $4,200.00. TRAM also gave the Merediths three options to renew for five year terms, at the same monthly rent.

Because the lease was created during the existence of the Merediths' marital community, it is community property, and the community's interest in the lease is property of the estate. 11 U.S.C. §541(a)(2).

### 3. Omitted Interest in Limited Liability Company

McKeithen also alleges that Meredith omitted from his schedules an interest in an entity known as Blue Heron Oil, L.L.C. ("Blue Heron"). Meredith testified that his daughter, Amy Hail, owns Blue Heron, though nothing in the record indicates that she paid anything for her interest in the company. Meredith also testified that the company

---

[4] Mrs. Meredith testified that she and her friends formed Takin' Stock to invest small amounts in stocks.

[5] Tobie and Ramey Eymard, Mike Eymard's sons, own TRAM. McKeithen Exhibit 12, p. 104.

[6] Belinda Meredith was the lessee at the time of her March 14, 2005 deposition.

3

was set up with the idea that he might consult for several businesses, in which case he believed (for reasons he did not explain fully) that it would be more "flexible" for his earnings to pass through Blue Heron and then be paid to him as salary.[7]

The record shows that Blue Heron holds interests in two pieces of real estate and receives a small amount of income from an interest in an oil well. However, the record contains no evidence that Blue Heron had any other major sources of income other than Meredith's consulting fees from Vada Energy ("Vada"), an oil and gas concern for which the debtor performed both engineering services and operational supervision services. Blue Heron used Meredith's consulting fees – his personal earnings – to make monthly distributions to Meredith, and also to pay his expenses.[8] Despite this, Meredith's schedules and statement of financial affairs make no reference to any agreement to transfer any of his fees to Blue Heron. In fact, schedule I filed in the record of the main case states that he is a self-employed oil and gas consultant. Nothing in the record indicates that Meredith is a party to any employment contracts.

Blue Heron also made the following distributions to the Merediths in the ninety days before Robert Meredith filed bankruptcy:[9]

---

[7] McKeithen Exhibit 12, pp. 10-12. Though Meredith testified that he never actually was an employee of the limited liability company, he did receive occasional draws from the entity.

[8] Also, Blue Heron leased a Lincoln Navigator for Belinda Meredith's personal use. The vehicle lease was not disclosed in the debtor's schedules. Belinda Meredith at the time of her deposition was a vice president of Caldwell Bank and Trust Co. No evidence supports a finding that she performed any services entitling her to compensation from Blue Heron.

[9] McKeithen Exhibit 6, pp. BB000094, BB000095, BB000098, BB000099, BB000103, BB000103, BB000104.

| Amount | Payee | Date |
|---|---|---|
| $ 700.00 | Robert Meredith | 1/09/04 |
| $ 250.00 | Robert Meredith | 1/30/04 |
| $ 800.00 | Belinda Meredith | 1/30/04 |
| $1000.00 | Robert Meredith | 2/27/04 |
| $1200.00 | Belinda Meredith | 2/27/04 |
| $1210.00 | Robert Meredith | 3/01/04 |

### 4. Omitted Pre-Bankruptcy Transfers

Meredith's statement of financial affairs affirmatively indicated that he had made no payments to his creditors in the ninety days before bankruptcy.[10] However, the evidence contradicted this, showing that $1000.00 was transferred to TRAM from the debtor's account at Caldwell Bank and Trust Company during the period.[11] The plaintiff also established that Belinda Meredith made several payments from her bank account in the ninety days preceding Robert Meredith's bankruptcy filing:[12]

| Amount | Payee | Date |
|---|---|---|
| $9000.00 | Cash | 12/17/03 |
| $1000.00 | TRAM | 12/22/03 |
| $ 516.12 | Entergy | 12/17/03 |
| $ 501.45 | Entergy | 01/21/04 |
| $ 509.62 | Entergy | 02/19/04 |

---

[10] Section 3 of Meredith's Statement of Financial Affairs is marked to indicate that no payments were made to creditors in the 90 days preceding the commencement of his case.

[11] McKeithen Exhibit 5, p. BB000080.

[12] McKeithen Exhibit 7, pp. BB000194, BB000195, BB000194, BB000194, BB000205, BB000211.

Finally, Robert and Belinda Meredith also made several charitable contributions within the year before Meredith filed his chapter 7 petition.[13] Meredith did not list any of those payments in his Statement of Financial Affairs.[14]

Meredith does not dispute that he failed to disclose these assets and transfers, which he contends are of little value in comparison to his scheduled debt. His primary defense is that the plaintiff has failed to prove that Meredith intended to hinder or defraud his creditors in connection with any of the omissions.

## B. Refusal to Obey Lawful Court Orders

McKeithen also contends that Meredith's discharge should be denied because he disobeyed an order to produce documents.

On August 17, 2004, the court ordered ("2004 Order")[15] Meredith to produce all "documents relating to the Debtor's property and financial affairs and his dealings with the financial affairs, affiliates, related entities, insiders, etc." over a 60 month period from 1999 through the date of production.[16] Meredith produced only twelve of sixty monthly statements for his personal bank account,[17] and only twelve of sixty monthly statements for his wife's checking account.[18] Additionally, Meredith did not produce any statements

---

[13] McKeithen Exhibit 7, pp. BB000130, BB000131, BB000132, BB000138, BB000139, BB000144, BB000145, BB000146, BB000150, BB000151, BB000152, BB000157, BB000159, BB000160, BB000164, BB000165, BB000166, BB000171, BB000177, BB000182, BB000189, BB000190, BB000191, BB000193, BB000195, BB000202, BB000203, BB000204, BB000205, BB000210, BB000211 (total gifts at least $3,200.00).

[14] McKeithen Exhibit 3, Meredith's Statement of Financial Affairs - Question 7.

[15] McKeithen Exhibit 4, p. BB000064.

[16] McKeithen Exhibit 4.

[17] McKeithen Exhibit 5.

[18] McKeithen Exhibit 7.

6

for his wife's savings account.[19] Moreover, in response to the 2004 Order the debtor produced only one monthly statement for each of his two investment accounts.[20]

Finally, although the 2004 Order required Meredith to produce all insurance policies related to Meredith's property, the debtor did not produce a single life insurance policy, despite testimony establishing that Meredith or his wife paid premiums on several policies.[21]

Meredith offered no explanation for his failure to produce the requested policies.

## ANALYSIS

### I.  11 U.S.C. §727(a)(2) [22] – Concealment or Transfer with Intent to Hinder, Delay or Defraud.

McKeithen claims that Meredith, with the intent to hinder, delay or defraud the trustee and his creditors: (1) concealed an assortment of community property when he filed his petition and (2) failed to disclose property transferred within one year before he filed bankruptcy.

To prevail, the plaintiff must prove (1) a concealment or a transfer; (2) of property belonging to the debtor or the estate;[23] (3) within the year preceding the bankruptcy

---

[19]  The deposition testimony established that the Belinda Meredith deposited her earnings in the account during their marriage. McKeithen Exhibit 11, p. 23. Accordingly, the sums on deposit are presumed to be community property. La. Civ. Code art. 2340.

[20]  McKeithen Exhibit 8.

[21]  McKeithen Exhibit 11, p. 43.

[22]  11 U.S.C. §727(a)(2): "The court shall grant the debtor a discharge, unless, -- the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed -- (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."

[23]  The property must belong to the estate in the case of post-petition concealment and it must belong to the debtor in the case of a pre-petition transfer.

7

filing; and (4) made with the intent to hinder, delay or defraud the creditors or an officer of the estate. *Cadle v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005).

The plaintiff has met her burden of proof.

### a. Concealment

Meredith failed to disclose several community assets in his initial schedules, and has failed to amend his schedules to make these disclosures. Omission of information from schedules may constitute concealment of assets for purposes of 11 U.S.C. §727(a)(2). *Peterson v. Scott*, 172 F.3d 959 (7th Cir. 1999).

The evidence established that Meredith and his wife had been married for over 13 years before Meredith filed bankruptcy, and were not parties to a separation of property agreement.[24] Because Louisiana Civil Code article 2340 provides that property acquired by the spouses during the existence of the community is presumed to be community property, all property that Meredith's wife acquired during the existence of the marital community is presumed to be community property. When Meredith filed his bankruptcy petition, property of the community became property of his bankruptcy estate. 11 U.S.C. §541(a)(2).

The plaintiff proved that Meredith failed to disclose community assets comprising jewelry, a partnership interest in his wife's name, a leasehold interest in his wife's name, a vehicle lease, a Chevy truck, and two tractors. The debtor also failed to disclose his wife's bank accounts.

Finally, the plaintiff had the burden of proving that Meredith concealed his property with actual intent to hinder, delay or defraud the trustee or the creditors.

---

[24] McKeithen Exhibit 11, pp. 5-6.

8

*Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417 (5th Cir. 1990).  A court may draw inferences based on circumstantial evidence to determine whether the debtor possessed the necessary intent.  *In re Krehl*, 86 F.3d 737 (7th Cir. 1996).  A debtor's evasion and deception, as evidenced by a pattern of omitting assets from his schedules, supports a finding that the debtor intended to hinder the discovery of assets by the trustee and creditors.  *Swift v. Bank of San Antonio (In re Swift)*, 3 F.3d 929, 931 (5th Cir. 1993).

The record contains sufficient circumstantial evidence from which the court infers that Meredith intended to hinder, delay or defraud the trustee or his creditors.

The evidence established that Meredith did not want to involve his wife in the bankruptcy proceedings.  Mrs. Meredith testified that she told her husband that she wanted nothing to do with the bankruptcy because she was worried that she might lose her bank job as a result, and that she would be extremely embarrassed by a bankruptcy filing in any case.[25]  Meredith's strategy for dealing with his wife's objection was to conceal assets that primarily benefited his wife by omitting them from his schedules.  His actions minimized the risk that the assets would be discovered and administered by a trustee.

The evidence supports the inference that Meredith intended to hinder or delay the trustee and creditors by omitting community assets in his wife's name, or under her day to day control, as well as prepetition transfers from those assets.

The plaintiff proved all elements necessary to deny the debtor's discharge on the grounds of concealment with intent to hinder, delay, or defraud the trustee and creditors.

---

[25] McKeithen Exhibit 11, pp. 17-18.

### b.    Transfer

Plaintiff also established that several pre-petition transfers were made from Mrs. Meredith's bank account. Most significant of those was Meredith's wife's $9,000.00 check payable to cash, which was drawn on her checking account on December 17, 2003, within 90 days of the bankruptcy filing.[26] The funds transferred by that check derived from income generated by Meredith's wife, and hence were community property. Meredith's wife testified that she could not remember why she had withdrawn such a substantial sum of money.[27]

Although withdrawal of money from a personal checking account is a transfer within the meaning of Bankruptcy Code section 727, *Bernard v. Schaefer (In re Bernard)*, 96 F.2d 1279, 1282 (9th Cir. 1996), no evidence establishes that Robert Meredith himself took part in making the pre-petition transfers out of his wife's bank accounts.

The evidence regarding Meredith's wife's transfer of funds from her checking account does not demonstrate the debtor's intent, a necessary element to deny a discharge under §727(a)(2). Accordingly, plaintiff has not proven that the debtor should lose his discharge as a result of that prepetition transfer.

---

[26]   McKeithen Exhibit 7, p. 194.

[27]   Mrs. Meredith's testimony simply is not credible, given that the transfer amounted to approximately one tenth of her annual income.

### II. 11 U.S.C. §727(a)(3) - Concealment or Failure to Keep or Preserve Financial Information.

McKeithen next charges that Meredith has either concealed or failed to keep and preserve certain records from which the debtor's financial condition can be ascertained. Accordingly, she also urges the court to deny Meredith's discharge under 11 U.S.C. §727(a)(3).[28]

To prevail under §727(a)(3), the objecting party must prove that the debtor (1) failed to keep or preserve financial records and (2) that the failure prevented the objecting party from ascertaining the debtor's financial condition. *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). Bankruptcy courts should deny a debtor's discharge when it is apparent that a debtor has breached his duty to keep proper records and the debtor fails to establish facts or circumstances that justify the lack of records. *Meridian Bank v. Alten*, 958 F.2d 1226 (3$^{d}$ Cir. 1992).

Bank statements, investment account statements and insurance policies all aid the trustee and creditors in ascertaining a debtor's financial condition. Therefore, a complete set of statements from Robert Meredith's numerous accounts was reasonably necessary to allow McKeithen (and other parties in interest) to investigate the various entities and the transactions among them and the debtor.

The absence of financial records, coupled with Meredith's failure to offer a compelling explanation for the absence of his financial records (all of which should have

---

[28] Bankruptcy Code section 727(a)(3) provides that the court may deny a discharge to the debtor if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case[.]"

11

been produced to McKeithen pursuant to the Court's 2004 Order in any case), mandates denial of his discharge.

### III. 11 U.S.C. §727(a)(4) - False Oath

McKeithen next objects to the debtor's discharge based on 11 U.S.C. §727(a)(4),[29] which allows the court to deny a discharge if the debtor knowingly and fraudulently makes a false oath in or in connection with the case. McKeithen alleges that several false statements in and omissions from Meredith's petition and schedules support denial of his discharge.

To warrant a denial of discharge under §727(a)(4), a plaintiff must prove that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was materially related to the bankruptcy case. *Cadle v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005), *citing In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

Meredith signed his bankruptcy petition and his schedules under oath.[30] Omissions from or false statements in the schedules or statement of financial affairs may justify a denial of discharge under 11 U.S.C. §727(a)(4). *See Cadle*, *supra*, at 566. False oaths concerning the discovery of assets, business dealings or the existence or disposition of the debtor's property are material. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir. 1984). Additionally, the debtor has an absolute obligation to disclose his assets,

---

[29] Bankruptcy Code §727(a)(4) provides in part: "The court shall grant the debtor a discharge, unless -- (4) the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account…."

[30] McKeithen Exhibits 1 & 2.

no matter how minimal their value. *Oldendorf v. Buckman,* 173 B.R. 99, 105 (E.D. La. 1994).

The existence of multiple falsehoods, coupled with a debtor's failure to clarify inconsistencies by filing amended schedules, may constitute reckless indifference to the truth and be considered proof of intent to deceive. *Oldendorf v. Buckman*, 173 B.R. 99, 104 (E.D. La. 1994).

One over-arching purpose of §727(a)(4) is to ensure that adequate information is available to those interested in the administration of the bankruptcy estate without the need for examinations or investigations to determine whether the debtor truthfully completed his schedules and statements.[31] The debtor does not have the option of deciding what should be included in his schedules and statement of financial affairs.

The plaintiff has established that Meredith is not entitled to a discharge as a result of his false oaths.

McKeithen proved that Meredith omitted from the schedules several community assets in which he has an interest, including jewelry, investment interests, a leasehold interest, a Chevy truck and two tractors. Meredith admitted that his schedules did not disclose these assets, along with several pre-petition transfers.[32]

Meredith's omissions from his schedules and statement of financial affairs all are material to his bankruptcy case. The debtor's omission of the community property, and his failure to disclose the prepetition transfers, delayed and hindered interested parties from investigating and identifying potential preferences and fraudulent conveyances, and

---

[31] *Oldendorf v. Buckman*, 173 B.R. at 104.

[32] McKeithen Exhibit 12.

perhaps other claims. Moreover, Meredith's failure to disclose his business interests truthfully and fully also prevented parties in interest from satisfactorily exploring his prepetition business dealings and property dispositions, including in particular the relationship of Meredith and his wife with Blue Heron, L.L.C.

Although McKeithen has offered no direct evidence of Meredith's fraudulent intent, once again the circumstantial evidence supports the inference that Meredith intended to defraud the trustee and his creditors to avoid involving Blue Heron and his wife in his bankruptcy case. Meredith is an experienced businessman[33] who has owned interests in several companies that have sought bankruptcy protection.[34] The evidence supports a finding that he knew of debtors' disclosure obligations under the Bankruptcy Code, and the court concludes that the only way Meredith could hope to avoid subjecting Blue Heron and his wife to the trustee and creditors' scrutiny in his bankruptcy was to omit information concerning the property and the transfers from his schedules and statement of financial affairs.

Meredith's false oaths justify a denial of discharge under 11 U.S.C. §727(a)(4).

### IV.    11 U.S.C. §727(a)(6)(A) - Refusal to Obey a Lawful Court Order

McKeithen also objects to Meredith's discharge on the ground that the debtor disobeyed an order of this court. Under 11 U.S.C. §727(a)(6)(A), a court must deny a

---

[33] *See e.g.* McKeithen Exhibit 12, p. 18 (guarantor of notes issued by Hogan Exploration, LLC and Louisiana Oil Ventures); p. 50 (membership in Louisiana Oil Ventures, LLC); pp. 52 - 80 (generally describing ownership interests in various companies and activities of those companies).

[34] The companies included Rock Bottom Sand and Gravel (McKeithen Exhibit 12, pp. 53 - 54); Delta Truck Lines, Inc. (McKeithen Exhibit 12, p. 56, 65); Hogan Exploration, LP (McKeithen Exhibit 12, p. 77); and Hogan Exploration, LLC (McKeithen Exhibit 12, p. 79).

discharge if the debtor has refused to obey any lawful order of the court. The objecting party has the burden of showing that the debtor has violated a court order.[35]

A debtor forfeits his discharge for refusing to obey a court order only in cases of willful disobedience, and not merely for inadvertence or mistake. *See Friendly Financial Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974). Mere failure to obey an order is insufficient under §727(a)(6)(A): the statute requires the debtor to *refuse* to obey the order. *See Concannon v. Constantini (In re Constantini)*, 201 B.R. 312, 316 (Bankr. M.D. Fla. 1996).

The 2004 Order required Meredith to produce certain documents pursuant to Bankruptcy Rule 2004. Meredith did not appeal or otherwise challenge the order. The 2004 Order specifically directed Meredith to produce several categories of documents at the offices of McKeithen's counsel no later than August 26, 2004.[36] Meredith did not produce many of the listed statements and documents, explaining throughout his

---

[35] Fed. R. Bankr. P. 4005.

[36] Paragraph 8 of the 2004 Motion required the production of:

    A. Any and all monthly or other account statements for the years 1999 through the present prepared and/or issued by any financial institutions at which you, or any Insiders or Affiliates, kept money or other negotiable securities, whether such statement refers to an checking account or savings account, safe deposit box, securities account, money market fund, bond account, certificate of deposit, IRA account, retirement account, annuity account or contract, and/or variable annuity account or contract….

                                             \*\*\*

    D. Any and all homeowner's, renter's, flood, fire, comprehensive general liability, or theft insurance policies, including any riders or attachments to such policies, issued to you, any Insider, or any Affiliate between the years 1999 through the present.

deposition that he could not find many of them.[37] McKeithen argues that this constitutes a refusal to obey the 2004 Order.

Several times Meredith testified that, although he could not locate many documents, he knew that they could be reproduced readily by the several financial institutions at which he maintained accounts. Given the debtor's testimony that the bank statements and other records were available from the institutions, and the ample time that Meredith had to retrieve them from the institutions, there is no justification for Meredith's not preserving financial documents that are necessary to ascertain his financial condition. Nor is there any justification for Meredith's not producing the complete bank statements of Blue Heron, Merrill Lynch investment account statements or Meredith's several insurance policies.

Finally, Meredith's explanation of why he did not produce his wife's bank statements just is not credible, given his wife's testimony that her bank statements were readily available, and in fact were in their house.[38]

The plaintiff established that as of the trial, Meredith still had not produced most of the records that the court ordered him to produce. Meredith's disobedience to the 2004 Order was willful, for he must lose his chapter 7 discharge.

## Conclusion

McKeithen has established that Meredith is not entitled to a discharge because he concealed community property and prepetition transfers, falsely swore to the accuracy of his schedules and statement of financial affairs, and willfully refused to obey a court order.

---

[37] McKeithen Exhibit 12, pp. 26 - 27.

[38] McKeithen Exhibit 11, p. 31.

16

Accordingly, the court shall enter a judgment denying Meredith's discharge.

Baton Rouge, Louisiana, December 28, 2005.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE